# UNITED STATES DISTRICT COURT

## DISTRICT OF RHODE ISLAND

**ALICE PETRONE**

    |

    **Plaintiff**

        **Vs.**                  **Civil Action No.**

**FEDERAL HOUSING FINANCE
AGENCY, FEDERAL HOME LOAN
MORTGAGE CORPORATION,
BAYVIEW  LOAN SERVICING, LLC
MERCHANT AND TRADERS TRUST COMPANY DBA M & T BANK**

    **Defendants**

## COMPLAINT FOR DECLARATORY, INJUNCTIVE RELIEF, AND DAMAGES

### *Introduction*

1.    Plaintiff, Alice Petrone, is the owner of real property located at  24 Bretton Woods Drive, Cranston, Rhode Island ("Property"), which is her primary residence.  Through this action Plaintiff challenges the lawfulness of the foreclosure sale of her residence which occurred on December 14, 2017, by certain Defendants: The Federal Home Loan Mortgage Corporation ("FHLMC" or "Freddie Mac"), an agency or instrumentality of the federal government; Freddie Mac's conservator and regulator, the Federal Housing Finance Agency ("FHFA"), a federal agency, Bayview Loan Servicing ( "Bayview") acting as an agent of Freddie Mac and FHFA, and M & T Bank ( "M & T") acting as an agent of Freddie Mac and FHFA. Plaintiff seeks declaratory relief, injunctive relief, damages, and other relief from this Court, because Defendants Freddie Mac and FHFA have a policy to deprive homeowners like the Plaintiff of their interest in their homes by conducting foreclosure sales in Rhode

Island without providing homeowners with adequate notice and an opportunity for a meaningful hearing, as required by the Due Process clause of the Fifth Amendment to the Constitution of the United States, and other laws. Pursuant to this policy, the Defendants are jointly seeking to deprive the Plaintiff of her interest in the Property, and cause harm to her in various other ways hereinafter stated.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action and all defendants pursuant to 28 U.S.C. § 1331, because this case arises under the Constitution and laws of the United States.

3. Further, this Court has jurisdiction over the current action and all defendants pursuant to 12 U.S.C § 1452 (f)(2) because this case is brought against Freddie Mac.

4. The principal events giving rise to the claims stated herein occurred in this district and venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391 (c)(2).

5. This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. Rule 57.

## THE PARTIES

6. The Plaintiff  is a citizen of the United States who resides at 24 Bretton Woods Drive, Cranston, RI ("Property").

7. The Federal Housing Finance Agency ("FHFA") is an independent agency of the United States Federal Government established pursuant to 12 U.S.C. § 4511 *et seq*.

8. The Federal Home Loan Mortgage Corporation ("FHLMC" and "Freddie Mac") is a corporation organized under the laws of the United States by special charter, to serve the important governmental objectives of providing stability in the secondary

mortgage market, responding appropriately to the private capital market, providing ongoing assistance to the secondary market for residential mortgages, and promoting access to mortgage credit throughout the nation by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing. <u>See</u> 12 U.S.C. § 1451 note.

9. Bayview Loan Servicing ( "Bayview"), is a limited liability company organized under the laws of the state of Delaware with a principal place of business in the state of Texas. Merchant and Traders Trust Company, dba M&T Bank ("M&T")in a New York corporation.

### <u>GENERAL FACTUAL ALLEGATIONS</u>

#### *The Conservatorship of FHFA over Freddie Mac*

10. In accordance with the Housing and Economic Recovery Act of 2008 ("HERA"), the federal government established FHFA as a federal agency to supervise and regulate Freddie Mac and affiliated entities, the Federal National Mortgage Association ("Freddie Mac") and affiliated entities, and any Federal Home Loan Bank. See 12 U.S.C. §§ 4502 (20), 4511(b)(2).

11. Among the powers the federal government granted to the FHFA pursuant to HERA was the power of its Director to place Freddie Mac into conservatorship under the FHFA and the power of the FHFA to operate and control all of Freddie Mac's operations as its conservator.

12. On or about September 7, 2008, the Director of the FHFA placed Freddie Mac under the conservatorship of the FHFA. See Statement of FHFA Director James B. Lockhart, http://www.treasury.gov/press-center/press-

releases/Documents/fhfa_statement_090708hp1128.pdf , accessed May 12, 2014. (Attached as Exhibit 1).

13. In January 2010, the Congressional Budget Office (hereafter "CBO") concluded that the actions taken by FHFA to place Freddie Mac under conservatorship effectively made Freddie Mac a government entity, based on the federal government's control and ownership of Freddie Mac. Budgetary Treatment of Freddie Mac and Freddie Mac, (Congressional Budget Office Background Paper, 2010), available at https://www.cbo.gov/sites/default/files/111th-congress-2009-2010/reports/01-13-fanniefreddie.pdf (Attached as Exhibit 2) at pages 1 ("In the judgment of the Congressional Budget Office (CBO), those actions make Freddie Mac and Freddie Mac part of the government and imply that their operations should be reflected in the federal budget"). Under the CBO's accounting, "the mortgages owned or guaranteed by Freddie Mac and Freddie Mac were treated as loans and guarantees of the federal government." Id. at page 7.

14. In 2013, the CBO again concluded, "the federal government is now the effective owner of [Freddie Mac], any gain or loss arising from a change in the way the distressed mortgages are handled by [Freddie Mac] would ultimately accrue to taxpayers." See Options for Principal Forgiveness in Mortgages Involving Freddie Mac and Freddie Mac (Congressional Budget Office, Mitchell Remy & Damien Moore, Working Paper No. 2013-02) available at https://www.cbo.gov/sites/default/files/113th-congress-2013-2014/workingpaper/44114_WorkingPaper-OptionsPrincipalForgivenesl_1.pdf (Attached as Exhibit 3) at page 1.

15. As conservator, FHFA controls all of the rights, titles, powers and privileges of the shareholders and board of directors of Freddie Mac. See Federal Home Loan Mortgage Corporation, Annual Report, Form 10-K, for the fiscal year ended December 31, 2015, www.freddiemac.com/investors/er/pdf/10k_021816.pdf , relevant portions attached as Exhibit 4, at pages 157-158, 177, 216.  Because FHFA as conservator has succeeded to the rights of all shareholders, the FHFA elects the directors, not shareholders. See Exhibit 4 at page 335.

16. As conservator, FHFA determines the size of Freddie Mac's Board of Directors and the scope of its authority. See Exhibit 4 at page 335. Since the start of the conservatorship and as recently as February 12, 2016, FHFA elected all of the directors and the Chief Executive Officer of Freddie Mac. See Exhibit 4 at page 335. FHFA delegated certain authority to the Board of Directors, while retaining certain significant authorities for itself. See Exhibit 4 at pages 157. FHFA may amend or withdraw the delegation of authority at any time. Exhibit 4 at page 157.

17. According to Freddie Mac, "FHFA controls our business activities." See Exhibit 4 at page 177. FHFA determines the strategic direction of Freddie Mac, defines its business objectives, and mandates activities, even though the objectives and activities FHFA mandates are costly to implement, have adversely affected Freddie Mac's financial results, and reduces Freddie Mac's profitability. See Exhibit 4 at page 157. Freddie Mac's management decisions "are subject to review and/or approval by FHFA and management frequently receives direction from FHFA on various matters involving day-to-day operations." See Exhibit 4 at page 157.

18.     Freddie Mac's directors serve on behalf of, and exercise their authority as directed by,

        FHFA. Exhibit 4 at pages 157, 216. As a result of the conservatorship, Freddie Mac is

        being managed to serve a public mission, which may negatively impact Freddie

        Mac's business and profitability. See Exhibit 4 at page 157, 216. Freddie Mac is not

        managed to maximize shareholder returns. See Exhibit 4 at page 177.

19.     FHFA, as both conservator and regulator, and the United States Treasury, pursuant to

        the senior preferred stock purchase agreement, prohibits Freddie Mac from paying

        any dividends to common shareholders. See Exhibit 4 at page 158, 217-219, 274.

20.     According to the FHFA's September 7, 2008 explanation of the conservatorship,

        there is "no exact time frame that can be given as to when this conservatorship may

        end." FHFA's conservatorship of Freddie Mac will end, according to said

        explanation, when the Director of FHFA issues an order terminating the

        conservatorship, after the Director determines that FHFA's "plan to restore the

        Company to a safe and solvent condition has been completed successfully." See

        FHFA, Questions and Answers on Conservatorship, (Sept. 7, 2008), available at

        http://www.treasury.gov/press-center/press-

        releases/Documents/fhfa_consrv_faq_090708hp1128.pdf. (Attached as Exhibit 5) at

        page 2; See also Exhibit 4 at page 217 ("Our future is uncertain, and the

        conservatorship has no specified termination date. We do not know what changes

        may occur to our business model during or following conservatorship, including

        whether we will continue to exist. We are not aware of any current plans of our

        Conservator to significantly change our business model or capital structure in the near

        term. Our future structure and role will be determined by the Administration and

Congress, and it is possible and perhaps likely that there will be significant changes beyond the near term. We have no ability to predict the outcome of these deliberations."). See also Exhibit 4 at page 176 ("The conservatorship is indefinite in terms of duration").

21.   As a result of FHFA's conservatorship of Freddie Mac, since September 6, 2008, and continuing now and for the foreseeable future, FHFA directly controls and operates Freddie Mac with all the powers of the shareholders, directors, and officers of Freddie Mac, owns title to all the assets of Freddie Mac, and has broad powers over all business of Freddie Mac.  See Exhibit 4 at Pages 157, 177.

22.   HERA does contain a provision automatically terminating FHFA's conservatorship of Freddie Mac, namely if FHFA's director appoints FHFA as receiver of Freddie Mac. *See* 12 U.S.C. 4617(a)(4)(D).  However, FHFA's control over Freddie Mac will not be terminated upon its being appointed as receiver.  There is no other law, regulation, policy or directive that provides either a date or specifies conditions by which FHFA's control over Freddie Mac will terminate.

23.   Even if the conservatorship were terminated by means other than the appointment of FHFA as receiver of Freddie Mac, Freddie Mac will remain subject to the control of the United States Treasury through the senior preferred stock purchase agreement, senior preferred stock, and warrant to purchase common stock. See Exhibit 4 at page 176, 218. See also Exhibit 4 at page 219 ("The purchase agreement has an indefinite term and can terminate only in limited circumstances, which do not include the end of the conservatorship") and page 157 ("The Treasury Agreements and the senior

preferred stock do not contain any provisions causing them to terminate or cease to exist upon the termination of conservatorship").

24.    On or about September 7, 2008, as restated on or about September 26, 2008, Freddie Mac entered into a senior preferred stock purchase agreement, as amended, with the United States Treasury. Pursuant to the senior preferred stock purchase agreement, Freddie Mac transferred to the United States Treasury 1,000,000 shares of preferred stock, senior in right for both dividends and liquidation to all other preferred or common stock of Freddie Mac, with an initial liquidation preference of $1,000.00 per share; a warrant to purchase 79.9% of the common stock of Freddie Mac at a nominal price; and certain restrictions on Freddie Mac's ability to issue new shares, declare dividends, or dispose of assets without the approval of the United States Treasury; in exchange for the commitment of the United States Treasury to extend up to $100 billion (later amended to $200 billion) to maintain the liquidity of Freddie Mac. See Amended and Restated Senior Preferred Stock Purchase Agreement, dated September 26, 2008, available at http://www.fhfa.gov/Conservatorship/Documents/Senior-Preferred-Stock-Agree/2008-9-26_BayviewPA_FannieMae_RestatedAgreement_N508.pdf, attached as Exhibit 6; see also Exhibit 4 at Pages 2, 157-158, 218.

25.    Since the conservatorship began in 2008 through the first quarter of 2012, Freddie Mac received a total of $71.3 billion from Treasury under the senior preferred stock purchase agreement to maintain a zero net worth. Because the senior preferred stock had an initial liquidation preference of $1 billion, the current aggregate liquidation

preference in favor of the United States Treasury for the senior preferred stock is $72.3 billion. See Exhibit 4 at Pages 2, 158.

26. The United States Treasury owns 100% of the senior preferred stock of Freddie Mac, and holds warrants to purchase 79.9% of the common stock of Freddie Mac at a nominal price on a fully diluted basis on the date of exercise. See Exhibit 4 at page 157-158; see also Fact Sheet: Treasury Senior Preferred Stock Purchase Agreement http://www.fhfa.gov/Conservatorship/Documents/Senior-Preferred-Stock-Agree/2008-8-7_BayviewPA_FactSheet_508.pdf attached as Exhibit 7.

27. By virtue of the senior preferred stock purchase agreement, as amended, the United States Treasury is entitled to receive quarterly dividends equal to the entire net worth of Freddie Mac, which results in every dollar of future profits being paid to the United States Treasury.  See Exhibit 4 Pages 1, 156, 158. Similarly, Freddie Mac is not permitted to retain earnings, rebuild a capital position, or pay dividends or other distributions to stockholders other than the United States Treasury. See Exhibit 4 at Pages 1, 156, 158, 217. Dividends are payable only at the direction of the Conservator FHFA and with consent of the Treasury. See Exhibit 4 at page 158, 219.

28. Through the first quarter of 2016, Freddie Mac paid a total of $98.2 billion in dividends to Treasury on the senior preferred stock. See Exhibit 4 at 2. However, under the terms of the senior preferred stock purchase agreement, dividend payments do not offset prior Treasury draws, and, therefore, the Treasury's ownership interest in Freddie Mac is not reduced by reason of the dividends. See Exhibit 4 at Pages 2, 156.

29.     Pursuant to the senior preferred stock purchase agreement, Freddie Mac is not permitted to redeem the senior preferred stock prior to the termination of the United States Treasury's funding commitment, which commitment will not terminate unless Freddie Mac is liquidated, Freddie Mac's liabilities are satisfied, or the Treasury has provided the maximum amount of funding available under its commitment to Freddie Mac. See Exhibit 4 at Pages 158, 219-220.

30.     The CBO considers the payments from Freddie Mac to the United States Treasury as "intragovernmental payments, which do not affect net federal outlays." See Exhibit 2 at page 3.

31.     Because Freddie Mac was chartered by Congress to further governmental objectives related to the secondary mortgage market and national housing policies, because the federal government maintains a substantial ownership interest in Freddie Mac, because Freddie Mac is substantially funded by the federal government, because the Board of Directors of Freddie Mac is entirely appointed by FHFA, and because Freddie Mac is under the control of FHFA and/or the United States Treasury, Freddie Mac is an agency or instrumentality of the United States for the purpose of individual rights guaranteed against the federal government by the United States Constitution. See DOT v. Ass'n of Am. R.R., 135 S. Ct. 1225, 1232-1233 (U.S. 2015); Lebron v. National Railroad Passenger Corp., 513 U.S. 374 (1995).

**The Agency Relationship between FHFA and Freddie Mac and the Servicing Agent.**

32.     Freddie Mac purchases mortgages that meet its underwriting standards from originators such as banks or thrifts. Freddie Mac holds these mortgages in its retained portfolios or packages them into mortgage-backed securities that it sells to investors.

See FHFA Office of Inspector General Evaluation Report, <u>FHFA's Oversight of the Servicing Alignment Initiative</u>, February 12, 2014, available at http://fhfaoig.gov/Content/Files/EVL-2014-003.pdf (attached as Exhibit 8) at page 6.

33.     For the mortgages that Freddie Mac purchases, Freddie Mac enters into contracts with mortgage servicers, including the "Servicing Guide" and other agreements. Under the terms of these agreements, the servicer collects mortgage payments, sets aside taxes and insurance premiums in escrow, forwards interest and principal payments to the contractually designated party, and responds to payment defaults. Exhibit 8 at Page 8.

34.     Through the "Servicing Guide" and other agreements, Freddie Mac established certain requirements for its servicers to follow when it performs its servicing duties, which include specific instructions on mitigating losses after borrowers default and conducting foreclosures on behalf of Freddie Mac. See Exhibit 8 at pages 8-9.

35.     After FHFA placed Freddie Mac into conservatorship, FHFA has engaged in continuous supervision of Freddie Mac's oversight of its servicers.  See FHFA Office of Inspector General, <u>FHFA's Supervision of Freddie Mac's Controls over Mortgage Servicing Contractors</u>, March 7, 2012, available at http://fhfaoig.gov/Content/Files/AUD%202012-001_0.pdf (Attached as Exhibit 9) at Pages 19-20. FHFA's Office of Inspector General describes "continuous supervision" as "a wide range of ongoing activities designed to monitor and analyze [Freddie Mac's] overall business profile, including any trends or associated emerging risks." See Exhibit 9 at page 20.

### *The Unconstitutional Foreclosure Policy of FHFA and Freddie Mac*

36.     In April, 2011, FHFA created the Servicer Alignment Initiative, as amended by four additional initiatives beginning in January 2012 (collectively, "SAI"), by which the FHFA directs the actions taken by Freddie Mac's mortgage servicers when servicing a delinquent mortgage loan, in order to maximize the financial benefits to Freddie Mac, and ultimately to the taxpayers. See Exhibit 8 at Pages 9-11.

37.     Through the SAI, the FHFA directed Freddie Mac to update its servicing guidelines by adding new standards and timelines by which servicers were to manage delinquent mortgages. See Exhibit 8 at page 10.

38.     In the SAI, the FHFA created a policy that requires servicers of Freddie Mac owned mortgages to follow specific state-level timelines for the processing of foreclosures from the date of referral to the attorney/trustee through the date of the foreclosure sale. See Exhibit 8 at page 10.

39.     In the SAI, the FHFA has directed Freddie Mac's servicers to use non-judicial foreclosure procedures when foreclosing on residential properties in Rhode Island, including the Plaintiff's Property. The foreclosure policy in the SAI requires servicers of Freddie Mac loans to foreclose on properties without a pre-deprivation hearing in violation of the Due Process Clause of the Fifth Amendment.

### *The Plaintiff's interest in the Property*

40.     On or about  August 26, 1998 the Plaintiff became the owner of the Property by a Warranty Deed,  which deed is recorded with the land records of the City of Cranston on   August 26, 1998  at Book 1041 and Page 788.

41.    On or about March 16, 2007 Plaintiff  borrowed $223,000.00  from Washington
       Mutual Bank, F.A. ("WAMU") ("Originating Lender"), which was evidenced by a
       promissory note (the "Note") on the same date.

42.    On or about the same date, the Note was secured by a mortgage ("Mortgage") in
       favor of the Originating Lender. The Mortgage was recorded on March 20, 2007, in
       the land records of the  City of Cranston at Book 3623 and Page 224.  The Plaintiff is
       named as a Borrower on to the Mortgage. The Mortgage is attached as Exhibit 10.

43.    On February 4, 2013, the Federal Deposit Insurance Corporation purported to assign
       the Mortgage to JPMorgan Chase Bank, N.A.by an assignment dated February 4,
       2013 and recorded on February 19, 2013 in the land evidence records for the City of
       Cranston in Book 4691 Page 348.  See Exhibit 11. On December 14, 2003, JPMorgan
       Chase Bank, N.A.by an assignment dated December 14, 2013 purported to assign the
       Mortgage to Bayview Loan Servicing, by an assignment recorded on January 21,
       2014 in the land records for the  City of Cranston at Book 4962 Page 233. See Exhibit
       12.

44.    On  December 2, 2014, Bayview Loan Servicing, LLC purported to assign the
       Mortgage to Federal Home Loan Mortgage Corporation, by an assignment recorded
       on December 5, 2014 in the land records for the City of Cranston at Book  4990 Page
       52. See Exhibit 13.

                          *The foreclosure proceedings against the Property*

45.    After   May 30, 2013, as a result of  financial hardship, Plaintiff became delinquent
       on her mortgage payments.

46. On or after December 13, 2013,  Bayview and M & T on behalf of Freddie Mac had referred the Plaintiff's Mortgage account to Michienzie & Sawin, LLC ("Michienzie") to exercise the statutory power of sale and foreclose on the Plaintiff's home. On August 27, 2018, on behalf of the Defendants, Michienzie sent a notice of foreclosure sale ("Notice") to the Plaintiff. See Exhibit 14. In the Notice, Michienzie stated its intention to sell the property described in the Mortgage, on October 19, 2018 at 2:00 PM.

47. In the Notice, Michienzie stated its intention to sell the property described in the mortgage deed.

48. Previously on October 5, 2015, on behalf of the Defendants, Michienzie sent a notice of foreclosure sale ("Notice") to the Plaintiff. See Exhibit 15.

49.  In the Notice, Michienzie stated its intention to sell the property described in the notice on December 5, 2015.

50. Previously on January 13, 2016, on behalf of the Defendants, Michienzie sent a notice of foreclosure sale ("Notice") to the Plaintiff. See Exhibit 16.

51.  In the Notice, Michienzie stated its intention to sell the property described in the notice on March 16, 2016.

52. Previously on December 29, 2017, on behalf of the Defendants, Michienzie sent a notice of foreclosure sale ("Notice") to the Plaintiffs. See Exhibit 17.

53.  In the Notice, Michienzie stated its intention to sell the property described in the notice on February 27, 2018.

54.  Previously on April 12, 2018, on behalf of the Defendants, Michienzie sent a notice of foreclosure sale ("Notice") to the Plaintiffs. See Exhibit 18.

55. In the Notice, Michienzie stated its intention to sell the property described in the notice on June 15, 2018.

56. None of the Defendants, prior to mailing of these Notices of Sale, had mailed the Plaintiff a default notice in the form required by the terms of paragraph 22 of the mortgage.

57. None of the Defendants, prior to mailing of these Notices of Sale, had mailed the Plaintiff an acceleration notice as required by the terms of paragraph 22 of the mortgage.

58. Plaintiff has not been provided a Notice of Foreclosure Counseling pursuant to R.I.G.L 34-27-3.1. This statute provides that at least 45 days prior to mailing a Notice of Sale to a mortgagor, the mortgagee must provide to the mortgagor a Notice of Foreclosure Counseling. This Notice, attached as Exhibit 19, dated July 12, 2018 and was not mailed until after July 13, 2018 and was not received by Plaintiff until July 16, 2018

59. Following the foreclosure policy in the SAI, neither Bayview, M & T, Freddie Mac, nor FHFA provided the Plaintiff an opportunity for an evidentiary hearing with Freddie Mac or FHFA at which the Plaintiff could have an opportunity to confront and cross-examine persons who supplied information upon which the foreclosure action is grounded; present arguments and evidence to dispute the allegations of Bayview, M & T Freddie Mac, and FHFA prior to the termination of her interest in the Property; be represented by counsel during a hearing prior to the termination of her interest in the Property; and to have a neutral informal hearing officer make a

determination based on applicable law and the evidence adduced at a hearing prior to the termination of the Plaintiff's interest in the Property.

60. Had the Plaintiff had an opportunity for a hearing, she could have presented evidence to challenge the foreclosure in one or more of the following ways:

   a. Whether Freddie Mac is the current holder of the Mortgage and authorized to exercise the power of sale;

   b. Whether the Defendants provided all required pre-foreclosure notices under state and federal law and the mortgage documents;

   c. Whether the Defendants sent a Notice of Default that strictly complies with Paragraph 22 of the Mortgage;

   d. Whether the Defendants complied with the provisions of R.I.G.L 34-27-3.1 for this foreclosure attempt,  and

   e. Whether the Defendants acted in good faith in their review and offers of loan modifications.

61. The Plaintiff has notified the Defendants, through their attorney, Michienzie, of the noncompliance with the default notice and that the Plaintiff qualifies for a Freddie Mac principal reduction modification.

## COUNT I – ATTEMPTS TO DEPRIVE PLAINTIFF OF HER PROPERTY WITHOUT DUE PROCESS OF LAW

62. Plaintiff realleges and incorporates paragraphs 1-63 by reference.

63. Pursuant to the foreclosure policy in the SAI, Bayview, M & T, Freddie Mac, and FHFA are acting jointly to deprive the Plaintiff of her ownership rights in the Property by seeking to conduct a foreclosure sale pursuant to Rhode Island General

Laws Chapter 34-27, entitled "Mortgage Foreclosure and Sale," which authorizes mortgagees to foreclose the rights of an equitable title holder without judicial process or the opportunity to be heard before the foreclosure sale.

64. When used by federal government actors, such as Freddie Mac and FHFA, the procedures of Rhode Island General Laws Chapter 34-27 do not satisfy the Due Process Clause of the Fifth Amendment before depriving an owner of her or her property. Specifically, Chapter 34-27 does not provide for adequate notice, an opportunity to be heard before the deprivation of property, or the opportunity to recover appropriate damages for an improper deprivation of property.

65. Pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution, Freddie Mac and FHFA, as agencies and/or instrumentalities of the federal government, owed a higher degree of notice and hearing to Plaintiff than is provided by Rhode Island General Laws chapter 34-27 before depriving the Plaintiff of her property.

66. The Plaintiff has a significant property interest at stake. The foreclosure, if allowed to take place, permanently deprives the Plaintiff of her ownership, possession, and use of the Property, which she uses as her primary residence; clouds the title to the Property; impairs her ability to sell, rent, or otherwise alienate the Property; taints her credit rating; reduces the chance of her obtaining a future loan or mortgage; subjects her to eviction; and jeopardizes her security in a dwelling place.

67. There is a significant risk of an erroneous deprivation of the Plaintiff's interest through the procedures used by Freddie Mac, and FHFA pursuant to RI General Laws chapter 34-27. To prevent an erroneous deprivation of property, the Due Process

17

Clause of the Fifth Amendment to the United States Constitution requires Freddie Mac, and FHFA to provide Plaintiff with an opportunity to be heard at a meaningful time on, *inter alia,* any challenge to the true ownership of the Note; any challenge to Freddie Mac's and/or FHFA's authority to foreclose on behalf of the owner of the Note; any challenge to Freddie Mac's and/or FHFA's determination of default under the Note and Freddie Mac's and/or FHFA's calculation of deficiency; any challenge to Freddie Mac's and/or FHFA's determination that the Plaintiff is not eligible for a loan modification, a repayment, or other homeowner assistance option; the opportunity to refinance or reinstate through other sources of funding; whether Freddie Mac and/or FHFA acted in good faith; and any challenge to Freddie Mac's and/or FHFA's compliance with applicable notice procedures.

68. The government's financial interest in obtaining ownership, possession, and use of the Property is minimal.

69. There are no exigent circumstances that would justify the lack of a pre-deprivation hearing, nor would a meaningful hearing before a neutral party impose significant fiscal or administrative burdens.

70. FHFA's foreclosure policy in the SAI violates the Due Process Clause of the Fifth Amendment in that it requires servicers of Freddie Mac loans to deprive homeowners like the Plaintiff of their primary residence through the use of non-judicial foreclosure proceedings which do not provide for a hearing prior to the deprivation of the homeowners' property interest.

71. Bayview, M & T, Freddie Mac, and FHFA jointly violated the Plaintiff's Fifth Amendment procedural due process rights by seeking to conduct several  non-judicial

foreclosure sales pursuant to Rhode Island General Laws Chapter 34-27 without first

providing adequate notice, a meaningful hearing prior to the deprivation of property,

and an opportunity to recover adequate damages.

72.     As a direct and proximate result of Bayview's, M & T's, Freddie Mac's, and FHFA's

violation of the Plaintiff's due process rights, the Plaintiff has suffered damages

including harm to her credit; costs and expenses of the foreclosure added to her

account; a loss of equity in the Property; expenses due to postage, mailing, and long-

distance telephone calls; an impairment of her ability to sell, rent, or otherwise

alienate the Property; and having her security in a dwelling place jeopardized.

WHEREFORE, The Plaintiff respectfully requests the Court to grant the following relief:

1)   A declaration that the Freddie Mac's and FHFA's policy of using non-judicial

foreclosure process in Rhode Island General Laws Chapter 34-27-4 (b), or any

foreclosure process that does not provide for adequate notice, a meaningful

evidentiary hearing prior to the deprivation of property, and an opportunity to recover

damages, violates the Plaintiff's due process rights under the Fifth Amendment to the

Constitution of the United States;

2)   A declaration that the various scheduled foreclosure sales of the Plaintiff's

Property  were invalid and void;

3)   A preliminary injunction and permanent injunction enjoining Freddie Mac and

FHFA from foreclosing on the Plaintiff's Property through the use the non-judicial

foreclosure process in Rhode Island General Laws Chapter 34-27-4 (b), or any other

foreclosure process that does not provide adequate notice, a meaningful hearing prior

to the deprivation of property, and an opportunity to recover damages if the

foreclosure is deemed erroneous;

4) A temporary injunction, a preliminary injunction and a permanent injunction enjoining Freddie Mac from recording the foreclosure deed, pending resolution of this matter.

5) Compensatory Damages;

6) Attorney Fees and Costs; and

7) Such other and further relief as the court considers appropriate.

> ALICE PETRONE
> By her Attorney

October 3, 2018

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com


## COUNT II – VIOLATION OF RHODE ISLAND GENERAL LAWS § 34-27-3.1

73. The Plaintiff realleges and incorporates paragraphs 1-74 by reference.

74. Rhode Island General Laws § 34-27-3.1 requires a mortgagee, to mail a mortgagor a Notice of Foreclosure counseling at least 45 days prior to the mailing of a Notice of Sale.

75. As alleged above Plaintiff was not provided a Notice of Foreclosure Counseling until July 16, 2018. This document was provided to her 41 days before the August 27, 2018 Notice of Sale.

76. Pursuant to R.I.G.L. 35-27-3.1, any foreclosure sale which does not comply with the

77.    provisions of the statute will be void and  any actions of the Defendants regarding this foreclosure attempt will be void pursuant to Rhode Island law.

78.    Plaintiff has incurred damages as a result of the actions of Freddie Mac and FHFA as alleged in this complaint. Her mortgage loan account has been charged improper fees and charges.

79. She has incurred emotional distress arising from the advertising of the foreclosure sale as a trespasser came to her property and threatened and harassed her resulting in the Cranston Police coming to her home

80.  Plaintiff has incurred legal fees for the prosecution of this action.

Wherefore Plaintiff demands the following relief:

A.  A declaration that the any charges arising from the August 27, 2018 Notice of Sale and subsequent advertising are invalid and void;

B.  A declaration that the Defendants did not comply with the provisions of R.I.G.L 34-27-3.1.

C.  Grant all other just and proper relief, including actual damages and costs and attorney fees.

                              ALICE PETRONE
                              By her Attorney


October 3, 2018                /s/ John B. Ennis_____
                              JOHN B. ENNIS, ESQ. #2135
                              1200 Reservoir Avenue
                              Cranston, Rhode Island 02920
                              (401) 943-9230
                              Jbelaw75@gmail.com

**COUNT III**

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN LENDING ACT BY FREDDIE MAC'S FAILURE TO SEND THE PLAINTIFF A MONTHLY MORTGAGE STATEMENT EACH MONTH PURSUANT TO THE PROVISIONS OF 12 C.F.R. 1026.41 AND 15 U.S.C. 1638**

81.     Paragraphs 1-80 are incorporated by reference.

82.     This is an action for damages brought by the Plaintiff, who is a consumer,  for Freddie Mac's violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA").

83.     Specifically, Plaintiff seeks the remedies provided in TILA for Defendant's failure to send the Plaintiff monthly mortgage statements as required by 15 U.S.C. §§ 1638 and 12 C.F.R. 1026.41 respectively.

84.     This Court has jurisdiction pursuant to 15 U.S.C. §1640 to provide private remedies for failure to respond to provide a borrower monthly statements.  15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint to a range of not less than $400.00 nor greater than $4,000.00.  Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

85.     The Defendant, Bayview is a limited liability company that services residential mortgage loans. Bayview claims to be the servicer of the mortgage loan, which is the subject of this complaint. The Defendant, M & T is claims to be the servicer of the Plaintiff's mortgage loan, which is the subject of this complaint

86.     Freddie MAC was the owner of the mortgage note and mortgage loan from April 19, 2018 to the present time.

87.      The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

88.     Plaintiff was not sent an accurate periodic monthly  in compliance with 12 C.F.R. 1026.41 since April 19, 2018.

89.     Pursuant to 12 C.F.R. 1026.41, the loan servicer on behalf of the creditor, Freddie Mac was required to send the Plaintiff a monthly mortgage statement that provides the following information:

(**d**) *Content and layout of the periodic statement.*  The periodic statement required by this section shall include:

(**1**) *Amount due.*  Grouped together in close proximity to each other and located at the top of the first page of the statement:

22

**(i)** The payment due date;

**(ii)** The amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received; and

**(iii)** The amount due, shown more prominently than other disclosures on the page and, if the transaction has multiple payment options, the amount due under each of the payment options.

**(2)** *Explanation of amount due.* The following items, grouped together in close proximity to each other and located on the first page of the statement:

**(i)** The monthly payment amount, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow and, if a mortgage loan has multiple payment options, a breakdown of each of the payment options along with information on whether the principal balance will increase, decrease, or stay the same for each option listed;

**(ii)** The total sum of any fees or charges imposed since the last statement; and

**(iii)** Any payment amount past due.

**(3)** *Past Payment Breakdown.* The following items, grouped together in close proximity to each other and located on the first page of the statement:

**(i)** The total of all payments received since the last statement, including a breakdown showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, sent to any suspense or unapplied funds account; and

**(ii)** The total of all payments received since the beginning of the current calendar year, including a breakdown of that total showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, currently held in any suspense or unapplied funds account.

**(4)** *Transaction activity.* A list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), *transaction activity* means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list.

**(5)** *Partial payment information.* If a statement reflects a partial payment that was placed in a suspense or unapplied funds account, information explaining what must be done for the funds to be applied. The information must be on the front page of the statement or, alternatively, may be included on a separate page enclosed with the periodic statement or in a separate letter.

**(6)** *Contact information.* A toll-free telephone number and, if applicable, an electronic mailing address that may be used by the consumer to obtain information about the consumer's account, located on the front page of the statement.

**(7)** *Account information.* The following information:

**(i)** The amount of the outstanding principal balance;

**(ii)** The current interest rate in effect for the mortgage loan;

**(iii)** The date after which the interest rate may next change;

**(iv)** The existence of any prepayment penalty, as defined in§ 1026.32(b)(6)(i), that may be charged;

(**v**)  The Web site to access either the Bureau list or the HUD list of homeownership counselors and counseling organizations and the HUD toll-free telephone number to access contact information for homeownership counselors or counseling organizations; and

(**8**)  *Delinquency information.*  If the consumer is more than 45 days delinquent, the following items, grouped together in close proximity to each other and located on the first page of the statement or, alternatively, on a separate page enclosed with the periodic statement or in a separate letter:

(**i**)  The date on which the consumer became delinquent;

(**ii**)  A notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured;

(**iii**)  An account history showing, for the previous six months or the period since the last time the account was current, whichever is shorter, the amount remaining past due from each billing cycle or, if any such payment was fully paid, the date on which it was credited as fully paid;

(**iv**)  A notice indicating any loss mitigation program to which the consumer has agreed, if applicable;

(**v**)  A notice of whether the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, if applicable;

(**vi**)  The total payment amount needed to bring the account current; and

(**vii**)  A reference to the homeownership counselor information disclosed pursuant to paragraph (d)(7)(v) of this section.

90.     None of these statements have been sent to the Plaintiff, inconformity with Regulation Z since April 19, 2018.  These statements have included improper and unreasonable charges for property inspections of $14.00 for each month since 2012.

91.     On each of these statements, her mortgage loan account has been charged improper and legal fees and costs arising from the previous foreclosure attempts in excess of $15,000.00 despite the failure to send her a default letter pursuant to the terms of the mortgage. M&T on each monthly statement since October 3, 2017 deceptively misstated the amount past due on the mortgage loan in an attempt to collect a debt. In each of these statements   M&T falsely stated the amount of the past due balances due. These assertions were inaccurate due to the following incorrect charges, which were improperly incurred and were neither reasonable nor necessary nor authorized by the terms of the mortgage:

a.      Legal fees in excess of $15,000.00 were included in the total amount claimed to be past due.

b.      Monthly property inspection fees charged since 2012 in the amount of $14.00, which were computer generated and were neither reasonable nor necessary.  M&T was aware that property was occupied as the Plaintiff was seeking loss mitigation and had significant communications herself of through an attorney at all times with the loan servicer.  These purported fees were  not actually paid to the purported vendor.

c.      In these statements M&T falsely indicated  that the mortgage loan account past due amount included what it referee to as recoverable corporate advance charges in increasing monthly amounts of $33,678.46, on the October 18, 2017 statement  through the September 17, 2018 statement which indicated a recoverable corporate advance charge of $35,261.46. These charges were neither reasonable nor necessary and were overstated and were not actually paid by M&T.

d.      In each of these statements, M&T did not credit the Plaintiff for trial modification payments that she made to Chase in the amount of $930.42 for more than three years and subsequent payments made after Chase transferred servicing. Each statement did not indicate an accurate balance for principal, interest and escrow due monthly and did not accurately reflect the amount due for the principal balance of the mortgage loan and inaccurately stated that the last mortgage payment made was February 1, 2012.  The Plaintiff's mortgage due date is not February 1, 2012 as falsely asserted in the periodic statements.

92.      Freddie Mac is liable for actual damages and statutory damages of up to $4,000.00 for failure to send any periodic statements since April 19, 2018.

93.      The Plaintiff has incurred actual damages, costs and legal fees in regard to this action:

a.      She  has incurred costs for gasoline to visit her attorney on at least  ten occasions, driving to her attorney's office for a round trip totaling 3  miles.  The IRS standard mileage allowance provides for .56 per mile.

b.      She has incurred postage costs and  copying costs and stationary and envelope costs for transmission to the Defendant.

c.      She has incurred attorney fees and costs for the prosecution of this action. Her fee agreement with her attorney provides that she will be responsible for legal fees expenses incurred in regard to this action.

d.      She requires the information from Freddie Mac in order to determine the amount of any possible modification of the mortgage loan.

e.      Her mortgage loan account has been charged unreasonable fees and expenses.

WHERFORE, Plaintiff demands Judgment against Freddie Mac for statutory damages of at least $4,000.00, for each failure to send an accurate monthly mortgage statement in conformity with TILA since April 19, 2017 plus actual damages, plus attorney fees and costs and all other just and proper relief.

October 3, 2018                          ALICE PETRONE
                                         By her Attorney


                                         /s/ John B. Ennis
                                         JOHN B. ENNIS, ESQ. #2135
                                         1200 Reservoir Avenue
                                         Cranston, Rhode Island 02920
                                         (401) 943-9230
                                         Jbelaw75@gmail.com


## COUNT IV
## VIOLATION OF THE FAIR DEBT COLLECTION
## PRACTICES ACT, 15 USC 1692 AGAINST BAYVIEW

94.    Paragraphs 1-93 are incorporated by reference.

95.    Bayview is a debt collector as defined by 15 USC 1692 et seq. since September 2017 has committed several violations of the Fair Debt Collection Practices Act ("FDCPA") and is liable to the Plaintiff for compensatory damages, statutory damages, and attorney fees and costs for violations.

96.    The primary business of Bayview is the collection of debts.

97.    At the time Bayview commenced servicing Plaintiff's mortgage loan account, Plaintiff was delinquent on her mortgage.

98.    Bayview has used unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiff.

99.    Bayview, through its attorney, has threatened to commence and has claimed to have commenced a non-judicial foreclosure to effect dispossession of the Plaintiff of her property even though Bayview and Freddie Mac had no present right to possession of the property claimed as collateral through an enforceable security interest.

100.    It also made a threat to take legal action which could not legally be taken. Specifically it stated, through its attorney, by the letter dated December 29, 2017 that a Mortgage Foreclosure sale of the Plaintiff's property would occur on February 27, 2018 at 11:00 AM.

101.    It also made a threat to take legal action which could not legally be taken. Specifically it stated, through its attorney, by the letter dated April 12, 2018 that a Mortgage Foreclosure sale of the Plaintiff's property would occur on February 27, 2018 at 2:00 PM.

102.    It also made a threat to take legal action which could not legally be taken. Specifically it stated, through its attorney, by the letter dated August 27, 2018 that a Mortgage Foreclosure sale of the Plaintiff's property would occur on October 19, 2018 at 2:00 PM.

103.    The last threat to conduct a Mortgage Foreclosure Sale on October 19, 2018 was a deceptive action on the part of Bayview due to the failure to provide a Notice of Foreclosure counseling.

104.    Each of these actions of Bayview was a violation of 15 U.S.C. 1692e(5).

105.    The facts alleged in this complaint establish that Freddie Mac did not have the present right to possession of the property claimed as collateral through an enforceable security interest.

106.    As alleged above, Bayview violated 15 U.S.C 1692e(5) by threatening to take legal action which it could not take.

107.    Bayview also violated section 1692e of the FDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt. Bayview made false representations regarding the character and legal status of the debt, namely that the loan had been accelerated and that Freddie Mac could exercise the statutory power of sale.

108.    All the actions of Bayview, alleged in this complaint, were designed to compel the Plaintiff to pay monies to Bayview and Freddie Mac, individually and through its attorney, on behalf of the alleged owner of the note and mortgage under the false threat of foreclosure of her home unless she made such a payment to Bayview, through its attorney on behalf of the entity, which claimed to own the note.

109.    15 U.S.C. § 1692(f) provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

110.    15 U.S.C. § 1692(d) provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

111.    Bayview violated 15 U.S.C. § 1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

112.    Bayview violated 15 U.S.C. § 1692(d) by employing an unfair and unconscionable means to collect the subject debt.

113.    Bayview conduct has caused Plaintiff to suffer great emotional distress driven by the fear that she might lose her home which has resulted in loss of sleep, anxiety, depression, and embarrassment.

114. Bayview's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for Plaintiff's rights.

115. The Plaintiff has incurred actual damages as a result of the violations of the FDCPA:

      a.      Plaintiff has incurred costs for gasoline to visit her attorney on at least occasions, driving to her attorney's office for ten round trips totaling more than 3 miles. The IRS standard mileage allowance provides for .56 per mile.

      b.      Plaintiff has used her cell phone to call and receive calls from her attorney after receiving the notices. These calls are charged to her pursuant to her cell phone usage and monthly fees.

      c.      Plaintiff has used electricity to recharge her cell phone for calls when she spoke with her attorney regarding these communications that she received from Bayview threatening foreclosure.

      d.      She has incurred attorney fees and costs to respond to these false communications.

      e.      She has suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of her home.

      f.      She has incurred legal fees to communicate with Bayview's attorney to cancel these improper attempted sales.

      g.      Her mortgage loan account has been charged unreasonable fees and costs for uncorroborated and unreasonable and unnecessary property inspections and improper legal fees and costs. Such costs have rendered a modification of the mortgage loan or reinstatement of the mortgage loan more expensive to the Plaintiff.

116. As a result of the above described acts of Bayview it is liable to the Plaintiff for actual damages, statutory damages, attorney's fees and costs.

117. Plaintiff has incurred legal fees in this action.

WHEREFORE, Plaintiff demands that Judgment be entered against

Bayview for the following relief:

      A.      Judgment against Bayview for actual damages, and statutory damages of $1,000.00 for each violation of the FDCPA.

      B.      Legal fees for the prosecution of this action.

C.    For all other just and proper relief.

ALICE PETRONE
By her Attorney

October 3 , 2018                                    /s/ John B. Ennis
                                                   JOHN B. ENNIS, ESQ. #2135
                                                   1200 Reservoir Avenue
                                                   Cranston, Rhode Island 02920
                                                   (401) 943-9230
                                                   Jbelaw75@gmail.com

## COUNT V
## VIOLATION OF THE FAIR DEBT COLLECTION
## PRACTICES ACT, 15 USC 1692, AGAINST M&T

118.    Paragraphs 1-117 are incorporated by reference.

119.    M & T  is a debt collector as defined by 15 USC 1692 et seq.  since October 3,
2018  has committed several violations of the Fair Debt Collection Practices Act ("FDCPA") and
is liable to the Plaintiff for compensatory damages, statutory damages, and attorney fees and
costs for violations.

120.    The primary business of M&T is the collection of debts.

121.    At the time M&T commenced servicing Plaintiff's mortgage loan account,
Plaintiff was delinquent on her mortgage.

122.    M&T  has used unfair and unconscionable means to collect or attempt to collect a
debt against the Plaintiff.

123     M&T has violated the provisions of U.S.C. 1692e by deceptively stating the
amount of the obligation it claimed was past due.

124.    M&T on each monthly statement since October 3, 2017 deceptively misstated the
amount past due on the mortgage loan in an attempt to collect a debt. In each of these statements
M&T falsely stated the amount of the past due balances due. These assertions were inaccurate
due to the following incorrect charges, which were improperly incurred and were neither
reasonable nor necessary nor authorized by the terms of the mortgage:

a.    Legal fees in excess of $15,000.00 were included in the total amount claimed to be past
due.

b.      Monthly property inspection fees charged since 2012 in the amount of $14.00, which were computer generated and were neither reasonable nor necessary.  M&T was aware that property was occupied as the Plaintiff was seeking loss mitigation and had significant communications herself of through an attorney at all times with the loan servicer.  These purported fees were  not actually paid to the purported vendor.

c.      In these statements M&T falsely indicated  that the mortgage loan account past due amount included what it referee to as recoverable corporate advance charges in increasing monthly amounts of $33,678.46, on the October 18, 2017 statement  through the September 17, 2018 statement which indicated a recoverable corporate advance charge of $35,261.46. These charges were neither reasonable nor necessary and were overstated and were not actually paid by M&T.

d.      In each of these statements, M&T did not credit the Plaintiff for trial modification payments that she made to Chase in the amount of $930.42 for more than three years and subsequent payments made after Chase transferred servicing. Each statement did not indicate an accurate balance for principal, interest and escrow due monthly and did not accurately reflect the amount due for the principal balance of the mortgage loan and inaccurately stated that the last mortgage payment made was February 1, 2012.  The Plaintiff's mortgage due date is not February 1, 2012 as falsely asserted in the periodic statements.

125.     Each of the monthly statements for October, 2017, November 2017, December 2017, January 2018, February 2018, March 2018, April 2018, May 2018, June 2018, July 2018, August 2018 and September 2018 falsely stated the amount past due on the Plaintiff's mortgage loan account for the reasons stated above.

126.     Each of these inaccurate statements were mailed to the Plaintiff in an attempt to collect a debt on behalf of the owner of the mortgage loan.

127.     In a letter dated November 3, 2017,  M&T falsely indicated to Plaintiff that the amount past due on the mortgage loan account was $142,727.07.

128      The amount past due on the mortgage loan account on that date was not $142,727.07 as this amount included improper fees and expenses as alleged above and did not credit Plaintiff with payments which she had made on the mortgage loan account.

129.     This letter was mailed to the Plaintiff in an attempt to collect a debt for the owner of the mortgage loan.

130.     In a letter dated January 9, 2018,  M&T falsely indicated to Plaintiff that the amount past due on the mortgage loan account was $146,325.71.

131.     The amount past due on the mortgage loan account on that date was not $146,325.71 as this amount included improper fees and expenses as alleged above and did not credit Plaintiff with payments which she had made on the mortgage loan account.

132.    This letter was mailed to the Plaintiff in an attempt to collect a debt for the owner of the mortgage loan.

133.    In a letter dated June 6, 2018, M&T falsely indicated to Plaintiff that the amount past due on the mortgage loan account was $155,466.43.

134    The amount past due on the mortgage loan account on that date was not $155,466.43 as this amount included improper fees and expenses as alleged above and did not credit Plaintiff with payments which she had made on the mortgage loan account.

135.    This letter was mailed to the Plaintiff in an attempt to collect a debt for the owner of the mortgage loan.

136.    The mailing of each periodic statement since October 3, 2017 to the Plaintiff and the mailing of the three purported default notices were each separate violations of 15 U.S.C. 1692e(2), in that each one falsely stated the amount of the debt owed by the Plaintiff.

137.    All the actions of M&T alleged in this complaint were designed to compel the Plaintiff to pay monies to, individually and through its attorney, on behalf of the alleged owner of the note and mortgage under the false threat of foreclosure of her home unless she made such a payment to M&T on behalf of Freddie Mac through its attorney on behalf of the entity, which claimed to own the note.

138.    15 U.S.C. § 1692(f) provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

139.    15 U.S.C. § 1692(d) provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

140.    79. M&T violated 15 U.S.C. § 1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

141.    M&T violated 15 U.S.C. § 1692(d) by employing an unfair and unconscionable means to collect the subject debt.

142.    M&T's conduct t has caused Plaintiff to suffer great emotional distress driven by the fear that she might lose her home which has resulted in loss of sleep, anxiety, depression, and embarrassment.

143.    M&T's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for Plaintiff's rights.

144.    The Plaintiff has incurred actual damages as a result of the violations of the FDCPA:

a. Plaintiff has incurred costs for gasoline to visit her attorney on at least occasions, driving to her attorney's office for ten round trips totaling more than 3 miles. The IRS standard mileage allowance provides for .56 per mile.

b. Plaintiff has used her cell phone to call and receive calls from her attorney after receiving the notices. These calls are charged to her pursuant to her cell phone usage and monthly fees.

c. Plaintiff has used electricity to recharge her cell phone for calls when she spoke with her attorney regarding these communications that she received.

d. She has incurred attorney fees and costs to respond to these false communications.

e. She has suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of her home.

f. She has incurred legal fees to communicate with Bayview's attorney to cancel these improper sale.

g. Her mortgage loan account has been charged unreasonable fees and costs for uncorroborated and unreasonable and unnecessary property inspections and improper legal fees and costs. Such costs have rendered a modification of the mortgage loan or reinstatement of the mortgage loan more expensive to the Plaintiff.

145. As a result of the above described acts of M&T it is liable to the Plaintiff for actual damages, statutory damages, attorney's fees and costs.

WHEREFORE, Plaintiff demands that Judgment be entered against

M&T for the following relief:

A. Judgment against Bayview for actual damages, and statutory damages of $1,000.00 for each violation of the FDCPA.

B. Legal fees for the prosecution of this action.

C. For all other just and proper relief.

ALICE PETRONE
By her Attorney

October 3 , 2018

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT VI

### CLAIM FOR INJUNCTIVE  RELIEF AND A PRELIMINARY
### AND PERMANENT INJUNCTION

**146.**     Paragraphs 1-45   are incorporated by reference.

147.     Plaintiff will be irreparably harmed if Defendant's improper exercise
of the statutory power of sale without complying with the terms of the mortgage is not voided
and  Defendant, Federal Home Loan Mortgage Corporation is allowed to obtain title to
Plaintiff's home and is allowed to evict Plaintiff from her home despite the improper foreclosure
sale of the Plaintiff's home.

**148.**     Plaintiff has a substantial likelihood of success in the pending action, would
otherwise suffer irreparable harm and can claim the greater hardship in the absence of an
order, which will not disserve the public interest if imposed.

148.    The failure of Freddie Mac to comply with the terms of the provisions of R.I.G.L
34-27-3.1 mortgage will render void any attempted foreclosure by Statutory Power of Sale,
without having the statutory power to do so and is a violation of due process of law.

149.    Plaintiff lives in this property, as her sole residence.

150.    These facts demonstrate that Plaintiff has a substantial likelihood of
success. Likewise a foreclosure of Plaintiff's property by a party not entitled to foreclose on the
property will cause Plaintiff irreparable harm, which hardship is greater than any hardship,
which may be claimed by defendant.

151.     Such relief sought by Plaintiff will not disserve the public interest if imposed.

152.     Plaintiff has incurred legal fees and expenses due to the conduct of the Defendant in
not complying with the terms of the mortgage and the provisions of R.I.G.L 34-27-3.1 and due
to the denial of due process.

WHEREFORE, Plaintiff demands that this Court:

a.	Declare that all actions of Freddie Mac and FHFA in attempting to exercise the statutory power of sale and foreclose on the Plaintiff's property are void.

b.	Grant a Preliminary Injunction Restraining and Enjoining Freddie Mac and FHFA and any other entity acting on their behalf from seeking to exercise the statutory power of sale.

c.	Grant a Mandatory Injunction ordering Freddie Mac and FHFA not to seek to exercise the statutory power of sale.

d.	Grant all other just and proper relief.

e.	Award Plaintiff attorney fees for the prosecution of this action.


ALICE PETRONE

By her Attorney


October 3, 2018	/s/ John B. Ennis_____
	JOHN B. ENNIS, ESQ. #2135
	1200 Reservoir Avenue
	Cranston, Rhode Island 02920
	(401) 943-9230
	Jbelaw75@gmail.com

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**