# EXHIBIT 8



# FHFA's Oversight of the Servicing Alignment Initiative

Evaluation Report • EVL–2014–003 • February 12, 2014



Synopsis
February 12, 2014

# FHFA's Oversight of the Servicing Alignment Initiative

## Why OIG Did This Report

During the financial crisis which started in 2007, delinquencies on mortgage loans owned or guaranteed by Fannie Mae and Freddie Mac (the Enterprises) increased rapidly. Many mortgage servicers – private companies contracted by the Enterprises to service their mortgages – did not respond effectively to the surge in delinquencies. For example, servicers often failed to assist financially distressed borrowers to secure Enterprise-sponsored loan modifications that would create more affordable mortgage payments. Consequently, many such borrowers ultimately lost their homes through foreclosure. Moreover, the Enterprises themselves likely incurred additional losses due to their servicers' failure to execute consistently their contractual responsibilities with respect to delinquent borrowers.

As the Enterprises' conservator, the Federal Housing Finance Agency (FHFA or Agency) established the Servicing Alignment Initiative (SAI) in April 2011 to improve the servicers' performance and thereby limit the Enterprises' financial losses.

SAI consists of a series of FHFA directives that set forth contractual requirements that the Enterprises must incorporate into their servicing guidelines. Servicers must comply with these guidelines when managing the accounts of financially distressed borrowers. For example, servicers are required to respond to borrowers' requests for assistance within specified timeframes, and conduct loan modifications and foreclosures pursuant to procedures and deadlines prescribed by FHFA.

We commenced this evaluation to assess FHFA's oversight of SAI since the establishment of the program in 2011. Specifically, we assessed FHFA's monitoring of the Enterprises' servicers' compliance with SAI guidelines.

## What OIG Found

*FHFA's Monitoring of Enterprise Servicers' Compliance with SAI is Limited*

FHFA's Division of Housing Mission and Goals (DHMG), which established SAI, has primary responsibility within the Agency for overseeing SAI and servicer compliance with its requirements. Therefore, DHMG staff reviewed the Enterprises' servicing guidelines prior to their publication in 2011 to ensure that they incorporated FHFA's SAI-related directives. DHMG also periodically communicates with other FHFA divisions and units with respect to the implementation of the SAI program.

However, DHMG's SAI oversight has significant limitations. Specifically, since establishing the program in 2011, DHMG has neither reviewed nor evaluated the servicers' overall compliance with SAI's numerous requirements. Moreover, DHMG does not require the Enterprises to submit for its routine review and assessment their critical reports on servicer compliance with SAI's requirements. Consequently, DHMG has not determined whether the servicers are complying with SAI or if the initiative is achieving its intended purpose.

# APPENDIX A

## FHFA's Comments on OIG's Findings and Recommendations



Federal Housing Finance Agency

### MEMORANDUM

DATE: February 11, 2014

TO: Richard Parker, Deputy Inspector General for Evaluations
FHFA Office of Inspector General

FROM: Sandra Thompson, Deputy Director
Division of Housing Mission and Goals

SUBJECT: Evaluation of FHFA's Oversight of the Servicing Alignment Initiative

This memorandum transmits the Federal Housing Finance Agency's (FHFA) management response to the findings and recommendations contained in the above referenced evaluation report (Report). We appreciate the opportunity to clarify FHFA activities related to the Servicing Alignment Initiative (SAI).

### The Roles of FHFA, the Division of Housing and Regulatory Policy, the Division of Enterprise Regulation and the Enterprises in SAI Oversight

#### FHFA and the Enterprises
FHFA serves as the primary regulator for the Enterprises. The legislative authority to oversee the Enterprises does not extend to oversight of the servicers. Consequently, FHFA is not in a position to perform any supervisory activities or directly monitor the servicers. While the Enterprises have negotiated agreements with servicers that allow FHFA's Division of Enterprise Regulation to access some servicer information, this access exists only as an outgrowth of FHFA's regulatory authority over the Enterprises to assure their safe and sound operation.

FHFA, as conservator, has the authority to make decisions affecting the Enterprises. However, the Agency has delegated responsibility for most business decisions back to the Enterprises. Under FHFA's delegation of authority, responsibility for overseeing servicer compliance with Enterprise policies rests with the Enterprises.

#### The Division of Housing Mission and Goals and the Division of Enterprise Regulation
One of the primary roles of FHFA's Division of Housing Mission and Goals (DHMG), and specifically DHMG's Office of Housing and Regulatory Policy (OHRP), is to maintain an awareness of, review changes to and identify areas for improvement of Enterprise selling and servicing policies. When a need is identified, OHRP works with the Enterprises to develop policy, which is implemented by the Enterprises through changes to their selling and servicing guides.



DHMG's role in policy development is distinctly and intentionally separated from FHFA's supervisory oversight activities. DHMG informs the Division of Enterprise Regulation (DER) of policy changes throughout the policy making process. Based on that information, DER can assess the risks and status of implementation in order to determine the appropriate supervisory approach to the matter at an appropriate future date. This typically results in ongoing monitoring activities to assess the Enterprises' implementation plans and execution, which may then result in onsite examination work. DER followed this process in its oversight of the rollout of SAI.

DER is responsible for supervision of the Enterprises to ensure they operate in a safe and sound manner. As OIG states in its Report, DER reviewed and found that Enterprise controls over SAI requirements were adequate. The servicer deficiencies noted in the OIG Report are all deficiencies that were identified by the Enterprises as part of their existing compliance function.

### DHMG has and continues to fulfill its role in directing the Enterprises' policy and programmatic changes and improvements

In addition to monthly servicer scorecards reviewed by DHMG's Deputy Director, OHRP subject matter experts receive and review specific monthly and quarterly reports from the Enterprises. This information, along with feedback from meetings with the Enterprises, stakeholders and other federal regulators, is used as a basis to determine if additional policy work is necessary. A few examples that demonstrate the effectiveness of this process include changes to Short Sale and Deed-in-Lieu policies and creation of the Streamlined Modification Program. These loss mitigation enhancements were made after the original implementation of SAI.

- **Short Sale and Deed-in-Lieu Policies** – After completion of an overhaul of the home retention option, standard modification, it became apparent that the servicer struggled to offer borrowers a suitable liquidation alternative. Across the two Enterprises there were four short sales and two deed-in-lieu offerings, each with their own distinct sets of rules and terms. FHFA applied the general SAI principles of streamlining and simplifying to these programs to make it easier and faster for borrowers to resolve their delinquencies. These changes were made because OHRP has an established process to identify where policy changes are needed.

- **Streamlined Modification Initiative** – Announced on March 27, 2013, this new modification program requires no borrower hardship or financial documentation. FHFA worked with the Enterprises to introduce the new program after conducting continuous assessment of Standard Modification uptake and determining that a uniform approach and a streamlined borrower application with simpler rules was not sufficient to assist all delinquent borrowers. In fact, the borrower challenges associated with compiling the required documentation was the persistent problem that needed to be addressed. Removing the administrative barriers associated with document collection and servicer evaluation enabled significantly more borrowers to access the available options to keep their homes.



OHRP and the Enterprises continued SAI policy discussions throughout 2013, which culminated in changes to Enterprise servicing guides to adapt relevant parts of SAI guidance to new Consumer Finance Protection Bureau (CFPB) regulations.

OIG Report Footnotes

We appreciate that, in Footnote 17, OIG refers to the GPRA Modernization Act of 2010 (GPRAMA). The actual performance goals (2.1.2 and 2.1.3) and means to assess them related to foreclosure prevention and loan modification activities (SAI) are contained on pages 17 and 18 of FHFA's Annual Performance Plan for 2014. DHMG reports on these goals on a quarterly basis as required by GPRAMA.

In Footnote 20 the Report infers that DHMG determined SAI was a success based solely on delinquency data provided by the Enterprises when, in fact, DHMG was noting that the data was one indicator perceived to show SAI was successful. DHMG's actual response to the question of whether it considered SAI a success, in full stated: "Yes. In August 2013, both Enterprises provided FHFA with one year statistics. The data demonstrated that for both Enterprises all major delinquency categories were reduced with the implementation of SAI. FHFA continues to meet with the Enterprises on a weekly basis to review and improve upon the SAI policies. Another perceived success measure is that both the upcoming CFPB Regulation X servicing rules and the AG settlement rules are aligned with existing SAI policy."

Report Recommendations and FHFA Responses

OIG recommends that DHMG's Deputy Director:

1. Establish an ongoing process to evaluate servicers' SAI compliance and the effectiveness of the Enterprises' remediation efforts.

   **FHFA Response**: FHFA partially agrees with this recommendation. DHMG, through its OHRP servicing team, will continue current practices which include periodic review of reports and dialogue with the Enterprises, stakeholders, other regulatory agencies and DER to determine if and when additional changes to servicing policies are necessary. DER will continue to monitor the Enterprises' controls over servicer compliance with their guides either as part of its overall examination plan or through targeted monitoring. FHFA will provide to OIG copies of SAI steering committee meeting notes by February 15, 2015.

2. Direct the Enterprises to provide routinely their internal reports and reviews for DHMG's assessment.
   **FHFA Response**: FHFA partially agrees with this recommendation. As stated above, DHMG management and subject matter experts review certain reports relevant to servicing activity, many of which are contained in a larger set of reports the Enterprises submit to DER. DHMG will continue its practice of reviewing reports in combination



with other activities related to servicing policy. FHFA will provide to OIG an updated list of the reports DHMG reviews by February 15, 2015.

3. Regularly review SAI related guidelines for enhancements or revisions, as necessary, based on servicers' actual versus expected performance.

   **FHFA Response:** FHFA partially agrees with this recommendation. The fact that a servicer does not comply with a guideline does not mean the guideline is problematic. DHMG will continue to engage in policy review as necessary and consider implications of servicer performance when reviews are completed by the Enterprises. FHFA will provide to OIG copies of SAI steering committee meeting notes by February 15, 2015.



# APPENDIX B

## OIG's Response to FHFA's Comments

Although FHFA states that it "partially agrees" with our three recommendations, we believe the response indicates that the Agency does not plan to alter substantively its limited oversight of SAI. FHFA claims that it lacks authority to assess servicer compliance with SAI – a program that it established in order to improve servicer performance and thereby limit the Enterprises' financial losses. We find FHFA's arguments for maintaining its current approach to be unpersuasive as described below.

### OIG's Response to FHFA Comments on its Lack of Regulatory Authority Over Servicers

FHFA's position is that it does not directly regulate the Enterprises' servicers, and that it has delegated to the Enterprises the responsibility to ensure that their servicers comply with SAI.

We understand that FHFA does not directly regulate servicers, but that fact is irrelevant to the oversight deficiencies we identify in this report. FHFA established SAI and prescribed the standards that servicers must meet in fulfilling their contracts with the Enterprises. FHFA's delegation of day-to-day SAI implementation responsibilities to the Enterprises does not absolve FHFA of its responsibility to determine whether SAI is having the desired impact on servicer performance.

### OIG's Response to FHFA's Comments on DHMG's and DER's Roles in SAI Oversight

FHFA has narrowly defined the roles of DHMG and DER with respect to SAI. According to FHFA, DHMG's role was to develop SAI, the implementation of which was left to the Enterprises, while DER's role is limited to reviewing the Enterprises' controls over SAI. Thus, no unit within FHFA is monitoring the servicers' compliance with SAI and determining whether it is having the desired impact on servicer performance.

### OIG's Response to FHFA's Planned Actions on the Draft Report's Recommendations

*Recommendation 1*: FHFA's response indicates that it plans to continue its current oversight approach with regard to SAI.

*OIG Response:* As described in the report, we believe FHFA's ongoing activities are insufficient. For example, the Agency has not compared servicer performance against the SAI work stream goals, even though SAI has been in effect for nearly three years. Moreover, FHFA has offered no plan for assessing the effectiveness and success of SAI.



*Recommendation 2*: The Agency states that it receives certain Enterprise reports relevant to servicing activity and will continue to review them; it appears unwilling to review the additional reports we have identified.

*OIG Response*: As we stated, the reports to which FHFA confines its oversight are insufficient to the task. The additional reports we identified are important; for example, they highlight significant servicer compliance deficiencies, such as failing to respond timely to requests for foreclosure alternatives. We believe FHFA should obtain these reports so that it may effectively evaluate servicers' SAI compliance and, by extension, the impact of SAI.

*Recommendation 3*: FHFA stated that the fact a servicer does not comply with a guideline does not mean the guideline itself is problematic.

*OIG Response*: We agree that a servicer's failure to comply with a guideline does not necessarily mean that the guideline is problematic. However, we believe that by reviewing the guidelines and servicer compliance FHFA may be better able to determine whether any enhancements to the guidelines are necessary.



# ADDITIONAL INFORMATION AND COPIES............................................

For additional copies of this report:

- Call: 202-730-0880
- Fax: 202-318-0239
- Visit: www.fhfaoig.gov

To report potential fraud, waste, abuse, mismanagement, or any other kind of criminal or noncriminal misconduct relative to FHFA's programs or operations:

- Call: 1-800-793-7724
- Fax: 202-318-0358
- Visit: www.fhfaoig.gov/ReportFraud
- Write:

    FHFA Office of Inspector General
    Attn: Office of Investigation – Hotline
    400 Seventh Street, S.W.
    Washington, DC 20024

